UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANDRE ANTROBUS,

                             Plaintiff,

              v.

C.O.  DAPECEVIC; C.O.
WELLINGTON; SUPT.  THOMAS R.
GRIFFEN, GREENHAVEN C.F.;
ANTHONY ANNUCCI, COMM.; AND
SUPV. MS.  KNAPP., GREENHAVEN
C.F.,

                             Defendants.

17-CV-5840 (KMK)

OPINION & ORDER

Appearances:

Andre Antrobus
Orangeburg, NY
*Pro Se Plaintiff*

Kara F. Sweet, Esq.
New York State Office of the Attorney General
New York, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

        Plaintiff brings this Action against Correctional Officer Dapecevic ("Dapecevic"),

Correctional Officer Wellington ("Wellington"), Superintendent Thomas R. Griffen ("Griffen"),

Supervisor Knapp ("Knapp"), and Commissioner Anthony Annucci ("Annucci") (collectively,

"Defendants"), pursuant to 42 U.S.C. § 1983.  (*See* Fifth Am. Compl. (Dkt. No. 67).)  Plaintiff

claims that Defendants violated his constitutional rights when his grievances were met with

inaction and retaliation while he was incarcerated at Green Haven Correctional Facility ("Green

Haven").  (*Id.* at 5; *see also* Compl. (Dkt. No. 2) 2, 4.)[1]  Specifically, Plaintiff alleges that his mail was being blocked after officers were informed that he filed several grievances against them.  Plaintiff also claims that his access to the grievance system was blocked, despite alerting authorities such as the New York State Attorney General, and that he was retaliated against through excessive strip searches.  (Fifth Am. Compl. 5.)  Plaintiff claims that he was physically assaulted during several of these strip searches and that his requests for medical attention were ignored.  (Compl. 2, 5; Fifth Am. Coml. 5–6.)  Plaintiff is requesting $750,000 in punitive damages and an additional $750,000 in compensatory damages for a total of $1,500,000.  (Fifth Am. Compl. 6.) [2]

Before the Court is Defendants' motion to revoke Plaintiff's in forma pauperis ("IFP") status and dismiss the case (the "Motion").  (*See* Letter from Kara F. Sweet, Esq., to Court (Jan. 19, 2018) ("Mot. To Revoke IFP") 1–2 (Dkt. No. 65).)  For the following reasons, Defendants' Motion is granted.

---

[1] The page numbering differs across each of Plaintiff's Complaints.  For ease of reference, the Court cites to the ECF-generated page numbers stamped at the top of each Complaint and all of Plaintiff's other submissions.

[2] Plaintiff split his damages into two payments of $750,000, one punitive and one compensatory, but incorrectly calculated his total damages as $1,400,000.  (Fifth Am. Compl. 6.)

## I.  Background

### A.  Factual Background[3]

The following facts are drawn from Plaintiff's Complaints and the documents appended thereto.[4]  Beginning sometime in 2014, Plaintiff alleges that Officers at Green Haven began to block his mail.  (Compl. 2; Fourth Am. Compl. 3 (Dkt. 36).)[5]  When Plaintiff filed a grievance

---

[3] For the purposes of this Motion, only the events leading up to and existing at the time of filing the Complaint are relevant in determining whether Plaintiff qualifies for the "imminent danger exception," which "only applies to danger existing at the time the [C]omplaint is filed." *Malik v. McGinnis*, 293 F.3d 559, 563 (2d Cir. 2002).

[4] In cases considering revocation of IFP, the Second Circuit has considered the amended complaint in addition to the original complaint.  *See, e.g.*, *Chavis v. Chappius*, 618 F.3d 162, 170–71 (2d Cir. 2010) (finding that the district court abused its discretion in denying the plaintiff leave to amend because allegations appeared sufficient to allege imminent danger); *Harris v. City of New York*, 607 F.3d 18, 24 (2d Cir. 2010) (considering both the initial and amended complaints).  However, an earlier Second Circuit decision, quoted by the Second Circuit in its most recent decision regarding the imminent danger exception, indicated that the existence of an imminent danger of serious physical injury must exist at the time the *original* complaint was filed to exempt Plaintiff from the three-strikes provision of 28 U.S.C. § 1915.  *See Malik*, 293 F.3d at 563 ("[T]he language of § 1915(g) makes clear that the 'imminent danger' exception only applies to danger existing at the time the complaint is filed."); *see also Akassy v. Hardy*, 887 F.3d 91, 96 (2d Cir. 2018) (quoting *Malik* for the proposition that "a prisoner must allege facts sufficient to show that he was "under imminent danger of serious physical injury at the time the complaint was filed," but not stating whether the plaintiff had filed an amended complaint or what effect that might have on the imminency analysis (internal quotation marks omitted)); *Carolina v. Rubino*, 644 F. App'x 68, 73 (2d Cir. 2016) (holding that the district court did not abuse its discretion in denying the plaintiff leave to amend because the plaintiff "alleged only past harms [and] his complaint did not present the possibility of his stating a valid-imminent-danger claim," so "amendment would have been futile").  To be thorough and fair to Plaintiff, and in an attempt to reconcile these cases, the Court has considered Plaintiff's original Complaint, all five Amended Complaints, and any other letters or documents submitted to the Court by Plaintiff.  However, citations will not be made to the First, Second, or Third Amended Complaints, because they are substantially similar to the original; indeed, it seems that the only difference is the addition or removal of various Defendants.  (*See* Compl; First Am. Compl. (Dkt. No. 6) (removing New York State as a Defendant and replacing it with Stormville); Second Am. Compl. (Dkt. No. 13) (adding Knapp as a Defendant); Third Am. Compl. (Dkt. No. 15) (removing Stormville as a Defendant).)

[5] Plaintiff's submissions are unclear regarding when exactly the relevant incidents occurred.  However, all of them indicate that at least some portion of the events occurred in 2014.  (*See* Compl. 3; Fourth Am. Compl. 2; Fifth Am. Compl. 5; Letter from Plaintiff to Court

about not receiving his mail, Dapecevic and Wellington were informed, and they allegedly began to threaten him with "serious physical injury." (Fourth Am. Compl. 3–4; Fifth Am. Coml. 5 (same, but not identifying perpetrators).) Plaintiff also allegedly received threats of injury and death from an unidentified "beat up squad" at Green Haven. (Compl. 2.) Upon being threatened, Plaintiff wrote letters to outside entities, including the Attorney General, Annucci, and the New York State Department of Corrections and Community Supervision ("DOCCS"). (Compl. 8; Fourth Am. Compl. 4; Fifth Am. Compl. 5.)

Plaintiff's letters to outside agencies were allegedly intercepted by some unidentified Green Haven employees, and allegedly because of those letters and his continued grievances, he was threatened again. (*See* Fourth Am. Compl. 4 ("I started to write outside agencies and the C.O.'s and sergeant would come tell me what I wrote in my letters, then the C.O.'s would threaten me some more with 'serious physical injury.'"); Fifth Am. Compl. 5 ("I alerted several authorities and agencies including [the] Attorney General[,] grieved again[,] then [it] escalated with more threats.").) When Plaintiff attempted to file another grievance, it was blocked, and the retaliation escalated to Dapecevic and Wellington strip searching him in front of at least several female Correctional Officers, which persisted for 11 months. (Compl. 5; *see also* Fourth Am. Compl. 4 (alleging "so it escalated again to 'illegal strip searches' tak[ing] off our clothes in front of female officers"); Fifth Am. Compl. 5 ("I grieved again and was blocked for 'retaliation' [and they] started to strip search us . . .").) Plaintiff has supported this claim with a number of notarized affidavits from fellow inmates who allegedly witnessed the strip searches. (Letter from Plaintiff to Court (Oct. 17, 2017) ("Pl.'s Oct. 17 Letter") Exs. 9–10, 12–15 (Dkt. No. 26).)

---

(Feb. 22, 2018) 3 (Dkt. No. 82).) In any event, regardless of when the events began, Plaintiff's recounting of them remains substantially similar throughout his pleadings and submissions.

When Plaintiff asked to see the "search slip" during one of the strip searches, he was "punched in [the] head and body." (Compl. 2; *see also* Fourth Am. Compl. 5; Fifth Am. Compl. 5.) [6] During another strip search, Plaintiff requested the strip search slip again, after speaking out about the strip searches in several community meetings in Green Haven, and he was thrown into a wall, injuring his shoulder and back, and punched repeatedly in those areas. (Compl. 2, 5; Fourth Am. Compl. 5; Fifth Am. Compl. 5.) Plaintiff does not specifically identify who assaulted him, but, construing his submissions liberally, he may be alleging that his attacker(s) was/were Dapecevic, Wellington, or both. (*See, e.g.*, Compl. 5 (alleging that at least Dapecevic and Wellington strip searched Plaintiff in retaliation for his grievances and that the retaliation was "[i]njury to [s]houlder and [b]ack when we complained about the violation thrown into wall").) Plaintiff requested medical attention for his injuries, but "was denied." (Compl. 2.) When Plaintiff finally received medical attention two years later, he learned that he had injuries to two of his spinal disks. (Letter from Plaintiff to Court (Aug. 25, 2017) ("Pl.'s Aug. 25 Letter") 2 (Dkt. No. 10).) When Plaintiff complained about the strip searches and his injuries at community meetings, Knapp and others threatened him if he did not stop, stating that "if you don't like it leave [and] . . . we will make you leave by all means necessary." (Fifth Am. Compl. 5; *see also* Fourth Am. Compl. 5 (same); Compl. 2 ("[Plaintiff] brings it up in community meeting and was threaten[ed] privately and in front of inmates . . . if you don['] t like it you can leave or we will make you leave, to stay under the radar or get hurt, urge of warning they out to get you . . ."); *id.* at 8 ("I spoke up at community meeting and was told you should never put in

---

[6] Although this term is undefined, it seems from Plaintiff's submission that the "strip search slip" is akin to the "authorization" required to conduct such searches. (*See* Letter from Plaintiff to Court (Aug. 25, 2017) ("Pl.'s Aug. 25 Letter") 2 (Dkt. No. 10).)

grievances or try to put in a laws[ui]t should[']ve stay[ed] under the radar and if I [d]on[']t like it [I] can leave.  Then Ms. Knapp . . . said we will make you leave in private.").)

In 2014 or 2015, Plaintiff was moved to Great Meadow Correctional Facility ("Great Meadow") and the retaliation that began at Green Haven allegedly followed him.  (Compl. 4; Fifth Am. Compl. 6.)  "By the time [Plaintiff] reached Great Meadow . . . Green Haven . . . called Great Meadow and the officers and the sergeant took [Plaintiff] in a secluded area and threaten[ed] [him] not [to] follow up on this lawsuit."  (Pl.'s Aug. 25 Letter 2.)  Plaintiff was additionally threatened several times by an unidentified caller from Green Haven.  (Compl. 4.) Plaintiff alleges that calls from Green Haven to Great Meadow occurred weekly, inciting retaliation against Plaintiff.  (Pl.'s Mem. of Law to Correct Error Made by Courts ("Pl.'s Oct. 13 Mem.") 3 (Dkt. No. 22).)  He also received death threats from Great Meadow's "beat up squad," though he does not identify the members of this squad.  (Compl. 4; *see also* Fifth Am. Compl. 6.)[7]

B.  Procedural History

Plaintiff filed the initial Complaint on August 1, 2017.  (Dkt. No. 2.)  Plaintiff filed an Amended Complaint on August 9, 2017.  (Dkt. No. 6.)  On August 22, 2017, Plaintiff's application for IFP status was granted.  (Dkt. No. 8.)  From September 2017 to January 2018, Plaintiff, without the consent of Defendants or being granted leave from the Court, *see* Fed. R. Civ. P. 15(a)(2), filed four additional amended complaints, (Dkt. Nos. 13, 15, 36, 67) and dozens of motions and submissions to the Court, (*see, e.g.*, Dkt. Nos. 21–23, 25–27, 30, 38, 41, 43, 51, 54, 61), prompting Defendants to file the instant Motion on January 19, 2018, (Dkt. No. 65).

---

[7] It is unclear whether the "beat up squad" was implementing the retaliation incited by the calls from Green Haven, or whether they were separately threatening Plaintiff so he would stop litigating an unspecified "lawsuit in state court."  (Compl. 4.)

The Court ordered Plaintiff to respond to the Motion and stayed Defendants' deadline to answer or file a pre-motion letter. (Dkt. No. 66.)

However, Plaintiff filed the operative Fifth Amended Complaint on January 24, 2018, and submitted additional documents on February 1 and 2, 2018. (Fifth Am. Compl; Dkt. Nos. 68–70.) The Court therefore ordered Plaintiff to stop filing amended complaints and any additional documents except for his response to the Motion. (Dkt. No. 71.) The Court had already issued several orders instructing the Plaintiff to cease filing submissions, motions, and amended complaints, (*see* Dkt. Nos. 55, 57, 64), and has continued to do so since February 6, 2018, (*see* Dkt. Nos. 72, 76, 84). Despite the Court's repeated orders, however, Plaintiff has continued to make submissions to the Court while Defendants' Motion has been pending. (*See* Dkt. Nos. 67–70, 75, 77, 81–82.)[8] In particular, on March 15, 2018, Plaintiff wrote a letter to the Court asking: "Can I pay $140.00 dollars to finish pay[ing] the difference . . . can you give me a month cause it[']s so soon and then pay the rest of the . . . ones in installments." (Letter from Plaintiff to Court (March 15, 2018) (Dkt. No. 85).) The Court noted that this "request to pay $140.00 sounds like a request to pay the filing fee and therefore moot the pending motion to revoke his IFP status," and thus directed Plaintiff to "clarify[] if that is his intent by 4/16/18." (Dkt. No. 86.) Plaintiff did not comply with that order. (*See* Dkt.)

## II.  Discussion

The Court granted Plaintiff's application to proceed in this case IFP on August 22, 2017. (*See* Dkt. No. 8.) As a result, Plaintiff has been able to proceed and make submissions to the court without the payment of fees. *See* 28 U.S.C. § 1915(a)(1). Defendants now move to revoke

---

[8] Plaintiff also twice attempted to raise new claims in recent submissions to the Court, (Dkt. Nos. 81, 85), but the Court informed him he must file a new lawsuit to do so, (Dkt. Nos. 84, 86).

Plaintiff's IFP status on the ground that he has amassed at least three "strikes," requiring the revocation of the status under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e. (*See* Mot. To Revoke IFP.)

A. The IFP Statute

The IFP statute was "designed to ensure that indigent litigants have meaningful access to the federal courts" and accordingly, waives the pre-payment of filing fees for qualifying prisoners of limited financial means. *Neitzke v. Williams*, 490 U.S. 319, 324 (1989). "However, concerned by the resulting rise of an 'outsize share of [prisoner] filings' and a 'flood of nonmeritorious claims,' Congress enacted the PLRA in 1996 in order to curb abuses of the IFP privilege and ensure 'fewer and better prisoner suits.'" *Jones v. Moorjani*, No. 13-CV-2247, 2013 WL 6569703, at *3 (S.D.N.Y. Dec. 13, 2013) (alteration in original) (quoting *Jones v. Bock*, 549 U.S. 199, 203 (2007)), *adopted by* 2014 WL 351628 (S.D.N.Y. Jan. 31, 2014); *see also Tafari v. Hues*, 473 F.3d 440, 443 (2d Cir. 2007) (explaining that the PLRA was "designed to stem the tide of egregiously meritless lawsuits"). Toward that end, the PLRA contains a "three strikes" provision which states:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g); *see also Coleman v. Tollefson*, 135 S. Ct. 1759, 1762 (2015) ("Among [the] reforms [is] the three strikes rule. . . ." (internal quotation marks omitted)).[9]

---

[9] The three strikes rule applies regardless of the fact that Plaintiff has already been granted IFP status. *See Jones*, 2013 WL 6569703, at *4 n.11 ("[T]he fact that [the plaintiff] has already been granted IFP status does not preclude revocation of that status and conditional dismissal of the action if he cannot subsequently pay the fee."); *Mason v. Nitti-Richmond*, No.

There is an exception to the three strikes rule where a prisoner is "under imminent danger of serious physical injury," 28 U.S.C. § 1915(g), and such imminent danger "exist[ed] at the time the complaint [was] filed," *Malik v. McGinnis*, 293 F.3d 559, 563 (2d Cir. 2002); *see also Akassy v. Hardy*, 887 F.3d 91, 96 (2d Cir. 2018) (same). In the Second Circuit, at least some cases have indicated that even when amended complaints are filed, the imminent danger must have existed at the time the *initial* complaint is filed.[10] *Harris v. City of New York*, 607 F.3d 18, 24 (2d Cir. 2010) (considering the plaintiff's initial and amended complaints and finding that no imminent danger existed "at the time [the plaintiff] filed his initial complaint."). "Although the feared physical injury must be 'serious,' courts 'should not make an overly detailed inquiry into whether the allegations qualify for the exception.'" *Liner v. Fischer*, No. 11-CV-6711, 2012 WL 2847910, at *3 (S.D.N.Y. July 11, 2012) (alteration omitted) (quoting *Chavis v. Chappius*, 618 F.3d 162, 169 (2d Cir. 2010)), *adopted by* 2012 WL 4849130 (S.D.N.Y. Oct. 12, 2012). But, though the Court must "construe [Plaintiff's pro se] complaint liberally and interpret it to raise the strongest arguments that it suggests," *Chavis*, 618 F.3d at 170 (alterations and internal quotation marks omitted), the imminent danger alleged "must be real, and not merely speculative or hypothetical," *Partee v. Connolly*, No. 08-CV-4007, 2009 WL 1788375, at *3 (S.D.N.Y. June

---

09-CV-7307, 2010 WL 2595108, at *3 (S.D.N.Y. June 25, 2010) (revoking IFP status and conditionally dismissing the complaint because of the three strikes rule).

[10] By contrast, the Eighth and Ninth Circuits both have interpreted the imminent danger exception to apply to amended complaints at the time they were filed. *See Jonassen v. United States*, 671 F. App'x 668, 668 (9th Cir. 2016) ("[The plaintiff's] proposed Third Amended Complaint ("TAC") . . . made plausible allegations that [the plaintiff] was 'under imminent danger of serious physical injury' at the time he lodged the TAC."); *Burke v. St. Louis City Jails*, 603 F. App'x 525, 525–26 (8th Cir. 2015) (per curiam) ("[T]he District Court should have considered whether [the plaintiff] met the imminent-danger exception when he filed his amended complaint, not when he filed his original complaint." (citing *Martin v. Shelton*, 319 F.3d 1048, 1051 (8th Cir. 2003)).

23, 2009) (internal quotation marks omitted)). Simply put, "unsupported, vague, self-serving, conclusory speculation is not sufficient to show that Plaintiff is, in fact, in imminent danger of serious physical harm." *Cash v. Bernstein*, No. 09-CV-1922, 2010 WL 5185047, at *3 (S.D.N.Y. Oct. 26, 2010) (internal quotation marks omitted); *see also Chavis,* 618 F.3d at 170 ("A court may find that a complaint does not satisfy the imminent danger exception if the complaint's claims of imminent danger are conclusory or ridiculous." (internal quotation marks omitted)); *Pettus v. Morgenthau*, 554 F.3d 293, 297 (2d Cir. 2009) (noting that the imminent danger exception is not so broad as to cover mere allegations of imminent danger); *Mitchell v. Fed. Bureau of Prisons*, 587 F.3d 415, 422 (D.C. Cir. 2009) (finding exception not satisfied where the plaintiff's "allegations [we]re vague and unspecific); *Ciarpaglini v. Saini*, 352 F.3d 328, 330 (7th Cir. 2003) (noting that "[f]requent filers sometimes allege that they are in imminent danger so they can avoid paying a filing fee").

Further, the Second Circuit has held that the complaint "must reveal a nexus between the imminent danger it alleges and the claims it asserts." *Pettus*, 554 F.3d at 298.[11] Thus, a court must "consider (1) whether the imminent danger of serious physical injury . . . allege[d] is *fairly traceable* to unlawful conduct asserted in the complaint and (2) whether a favorable judicial outcome would *redress* that injury." *Id.* at 298–99. The Second Circuit explained that "[t]his

---

[11] Other Circuit Courts have either declined to expressly adopt this test from *Pettus* or have applied it without explanation. *See, e.g.*, *Barber v. Krepp*, 680 F. App'x 819, 821 (11th Cir. 2017) ("[W]e need not decide in the present case whether § 1915(g)'s 'imminent danger' exception requires proof of such a nexus [from *Pettus*]."); *Ball v. Hummel*, 577 F. App'x 96, 96 n.1 (3d Cir. 2014) (applying *Pettus* nexus test); *Vandiver v. Prison Health Services, Inc.*, 727 F.3d 580, 588 (6th Cir. 2013) ("[W]e decline to reach whether § 1915(g) incorporates a nexus requirement, as [the plaintiff] would not prevail even if we were to adopt the Second Circuit standard."); *Mitchell*, 587 F.3d at 421 (noting that the court had "no need to address" the government's nexus argument, citing *Pettus*, because the prisoner did not specifically allege imminent danger).

inquiry is not identical to [the] ordinary standing inquiry, but . . . is sufficiently similar to afford guidance to courts considering the nexus question." *Id.* at 299. Thus, the "fairly traceable" prong of the analysis is a lower standard than that of proximate cause, requiring no direct link between the defendant and the injury, but "indirectness of an injury may make it substantially more difficult to show the fairly traceable element." *Rothstein v. UBS AG*, 708 F.3d 82, 91 (2d Cir. 2013); *see also Pettus*, 554 F.3d at 299 n.1 (rejecting suggestion that "'but for' cause between an asserted illegality and an alleged imminent danger should be required"). As for the redressability prong, the plaintiff must show "that there is a substantial likelihood that the relief requested will redress the injury claimed"; that is, that the plaintiff is "in a position to benefit in some personal way." *E.M. v. New York City Dept. of Educ.*, 758 F.3d 442, 450 (2d Cir. 2014) (internal quotation marks omitted). Accordingly, "a three-strikes prisoner cannot proceed IFP against [parties] to whom prison conditions are not fairly traceable or in circumstances in which it is speculative to assert that judicial relief will actually redress the[] allegedly unlawful conditions." *Pettus*, 554 F.3d at 299.

### B. Plaintiff's IFP Status

#### 1. Plaintiff's "Strikes"

Defendants assert that the following four cases qualify as "strikes" sufficient to revoke Plaintiff's IFP status: (1) *Antrobus v. Project Moving on Program and its Psychartrist* [sic], No. 11-CV-1621 (S.D.N.Y. Apr. 21, 2011); (2) *Antrobus v. Rameau*, No. 11-CV-5273 (S.D.N.Y. Sept. 14, 2011); (3) *Antrobus v. Dep't of Corrs. Of Rikers Island*, No. 12-2372 (2d Cir. Nov. 13, 2012); and (4) *Antrobus v. 13 Unamed T.A.'s*, No. 12-CV-7114 (S.D.N.Y. Sept. 19, 2012). (Mot. To Revoke IFP 2.) Another court in this District has already found the first three cases listed to be "strikes" against Plaintiff, (Mot. To Revoke IFP Ex. 1 (*Antrobus v. Wright*, No. 13-

CV-3804 (S.D.N.Y. 2013) (Dkt. No. 4)), and, after giving Plaintiff an opportunity to be heard, revoked his IFP status, dismissed the action, and stated that "[u]nless Plaintiff is under imminent danger of serious physical injury, he is barred from filing future civil actions [IFP] in federal court while he is a prisoner," (*id.* Ex. 3 (*Antrobus v. Wright*, No. 13-CV-3804 (S.D.N.Y. 2013) (Dkt. No. 6); *id.* Ex. 4 (same (Dkt. No. 7)). Because Plaintiff does not challenge this order or contest that he has received three qualifying "strikes" under the IFP statute, the Court will revoke his IFP status in this Action if he does not qualify for the imminent danger exception.[12]

## 2. Imminent Danger Exception

There is a dearth of precedent applying the imminent danger of serious physical harm exception under § 1915(g). Therefore, before analyzing Plaintiff's claims, the Court has attempted to describe the state of the law in this area.

---

[12] In any event, the Court agrees with Judge Preska that the first three cases listed above qualify as "strikes." The first two cases were both dismissed for failure to state a claim upon which relief may be granted because Plaintiff brought § 1983 claims against private parties. (*See Antrobus v. Project Moving on Program and its Psychartrist* [sic], No. 11-CV-1621 (S.D.N.Y. Apr 21, 2011) (Dkt. No. 4); *Antrobus v. Rameau*, No. 11-CV-5273 (S.D.N.Y. Sept. 14, 2011) (Dkt. No. 5).) *See* 28 U.S.C. § 1915(g) (listing dismissals for "fail[ure] to state a claim upon which relief may be granted" as qualifying strikes); *see also Welch v. Galie*, 207 F.3d 130, 132 (2d Cir. 2000) (same). And, in the third case, the Second Circuit dismissed Plaintiff's appeal "because it lack[ed] arguable basis in law or fact." *Antrobus v. Dep't of Corrs. of Rikers Island*, No. 12-2372 (2d Cir. Feb. 1, 2013) (Dkt. No. 57). *See* § 1915(g) (listing dismissal on the grounds that an action "is frivolous" as a strike); *see also Read v. Zugibe*, No. 10-CV-8428, 2012 WL 1850910, at *2 (S.D.N.Y. May 21, 2012) (concluding that a dismissal for lack of "arguable basis in fact or law" means a dismissal for being "frivolous" under § 1915(g)).

However, the Court notes that the fourth case Defendants cite does *not* qualify as a strike, because Plaintiff's claims there were dismissed at summary judgment for failure to exhaust administrative remedies. (Mot. To Revoke IFP Exs. 5, 6 (*Antrobus v. 13 Unamed T.A.'s*, 12-CV-7114 (S.D.N.Y. Sept. 19, 2012) (Dkt. Nos. 122, 123)).) *See Tafari v. Hues*, 473 F.3d 440, 442 (2d Cir. 2007) ("[Section] 1915(g) does not encompass dismissals for failure to exhaust administrative remedies.").

As explained above, the Second Circuit requires a plaintiff to meet two requirements to qualify for the imminent danger exception.  First, he must be in imminent danger of serious physical injury at the time the complaint was filed.  *See Malik*, 293 F.3d at 563; *see also Polanco v. Hopkins*, 510 F.3d 152, 156 (2d Cir. 2007) (declining to overturn the time-of-filing requirement created by *Malik*).   In at least one Second Circuit decision, this requirement has applied to the time *initial* complaint was filed, even when an amended complaint was filed.  *See Harris*, 607 F.3d at 24 ("Construing [the plaintiff's] initial and amended complaints to raise the strongest arguments that they suggest, we do not conclude that the facts alleged support a finding that he was in imminent danger at the time he filed his initial complaint.  Accordingly, [the plaintiff] does not qualify for the statutory exception." (citation and internal quotation marks omitted)).  Second, the complaint must "reveal a nexus between the imminent danger it alleges and the claim it asserts."  *Pettus*, 554 F.3d at 298.  In evaluating whether such a nexus exists, the Court should consider "(1) whether the imminent danger of serious physical injury. . . allege[d] is *fairly traceable* to unlawful conduct asserted in the complaint and (2) whether a favorable judicial outcome would *redress* that injury."  *Id.* at 298–99.

The Court looks to the nine published Second Circuit opinions analyzing the imminent danger exception to shed further light on how to apply these two requirements.[13]  In its first reported opinion on this topic, the Second Circuit considered a plaintiff's allegation that "corrections officials were engaged in a twenty-year conspiracy to violate his right to access to court and to injure or kill him."  *Welch v. Galie*, 207 F.3d 130, 131 (2d Cir. 2000) (per curiam).

---

[13] The Court does not discuss other Second Circuit decisions analyzing other aspects of the IFP statute that are not relevant here.

The plaintiff specifically argued that he was in imminent danger because "the corrections officials were physically harming him as part of the conspiracy" by denying him medical treatment. *Id.* The Second Circuit held that cases dismissed prior to the enactment of § 1915(g) still counted as strikes under the statute, relegating its consideration of the imminent danger exception to one sentence: "In light of this holding, and our judgment that [the plaintiff's] claim to fall within the 'imminent danger' exception to § 1915(g) is meritless, we conclude that the District Court properly dismissed [the plaintiff's] complaint." *Id.* at 132.

Two years later, the Second Circuit decided *Malik*. *See* 293 F.3d 559. In that case, the plaintiff, while incarcerated at the Attica Correctional Facility, filed a complaint against correction officers employed at the Southport Correctional Facility. *Id.* at 560. He specifically alleged that the Southport defendants violated the Eighth Amendment "when they disciplined him by severely restricting his diet for thirty-five days." *Id.* The district court denied the plaintiff IFP status, noting that he had four strikes and did not fall within the imminent danger exception "because his allegations concern events that occurred at Southport," but he was incarcerated at Attica "by the time the complaint was filed." *Id.* (internal quotation marks omitted). The plaintiff moved for reconsideration, claiming that the imminent danger exception required him to show that he was in danger of serious physical injury when the incident occurred, not when the complaint was filed. *Id.* at 561. The district court denied the motion, and the plaintiff appealed that denial, "not the initial denial of the motion to proceed [IFP]." *Id.* The Second Circuit affirmed, holding, in accordance with all other circuits that have addressed this issue, that "the language of § 1915(g) makes clear that the 'imminent danger' exception only applies to danger existing at the time the complaint is filed." *Id.* at 562–63.

Next, in 2007, the Court decided *Polanco*. *See* 510 F.3d 152. The plaintiff there alleged

that "he had been exposed to mold in a gym shower at Elmira Correctional Facility . . . and was unjustly disciplined on two occasions" at Auburn Correctional Facility, where he was incarcerated at the time of filing the complaint. *Id.* at 154. The plaintiff "argued that, at the time of the events described in the complaint" he faced a risk of imminent danger of physical harm, and that, if the exception "required imminent danger at the time of filing" instead, "the exception was overbroad" and violated the Fifth Amendment's Equal Protection Clause. *Id.* The Second Circuit held, without explanation, that the district court did not err in concluding that the plaintiff's allegations regarding "the health risks associated with his exposure to mold or to his claim of unjust discipline" did not satisfy the imminent danger exception. *Id.* at 155. The court then found "none of his constitutional challenges persuasive and join[ed] the other circuits that ha[d] upheld the constitutionality of the statute." *Id.* at 156 (collecting out-of-circuit cases). It thus reaffirmed the "time-of-filing interpretation in *Malik*." *Id.*

Two years later, the Second Circuit decided *Pettus*, in which it announced the nexus requirement. *See* 554 F.3d 293. In that case, the plaintiff alleged, among other things, that various New York State Department of Correctional Services employees "who transferred him from Elmira [Correctional Facility] to the Southport Correctional Facility, a so-called supermax facility for especially violent offenders, were biased and incorrectly classified him." *Id.* at 295. He also alleged "that at Southport he has been surrounded by hostile, aggressive, violent inmates who beat, rob, assault, extort, and sexually abuse him, and that he has been denied access to needed medication." *Id.* The Second Circuit noted that "the complaint does not seek any relief specifically related to the abusive conditions" at Southport, nor did the plaintiff "name anyone at Southport as a defendant." *Id.* at 296. Instead, the defendants were, 'with one possible exception," the judges and district attorneys involved in his prosecution and several Department

of Correctional Services employees involved in disciplinary proceedings at Elmira. *Id.* at 296.

The Second Circuit held that the imminent danger exception "require[d] that the prisoner's complaint seek to redress an imminent danger of serious physical injury and that this danger must be fairly traceable to a violation of law alleged in the complaint." *Id.* at 297. The court went on to hold that the plaintiff's claims—regarding "allegedly improper prosecution and inmate classification"—were "much too attenuated" from the alleged imminent danger of serious physical injury—the threatening conditions at Southport due to violent inmates—to satisfy the nexus requirement. *Id.* at 299. Further, even if the plaintiff "were entirely successful in pursuing these claims," the court held that it was "entirely speculative" that the judicial relief sought would redress the imminent danger he asserted. *Id.* The Second Circuit noted "one possible exception" to its analysis: one defendant, the Commissioner of DOCS, was allegedly responsible for managing, training, controlling, and disciplining DOCS employees, which includes Southport, a DOCCS facility, and therefore "[t]he threatening conditions . . . at Southport may be fairly traceable to [the defendant's] oversight of DOCS." *Id.* However, it concluded that this defendant was properly dismissed on the merits. *Id.* at 300.

In 2010, the Second Circuit decided two additional cases concerning the imminent danger exception. In June, the Second Circuit decided *Harris*. *See* 607 F.3d 18. The plaintiff's original complaint alleged that he "was assaulted by approximately ten corrections officers at Riker's Island," and that he filed a grievance "stating that his request for medical treatment for his injuries was denied." *Id.* at 20. The plaintiff later filed an amended complaint alleging that "he was attacked again" by officers because he filed suit, "and that he suffered a ruptured eardrum, for which he was denied medical attention," and "a fractured jaw" from the original assault. *Id.* In response to the defendant's motion to revoke IFP, the plaintiff asserted that he "remain[ed] in

and has suffered imminent danger of serious injury." *Id.* at 21 (internal quotation marks and alterations omitted). The Second Circuit devoted the majority of its opinion to analyzing the plaintiff's arguments about the applicability of the three strikes provision, which are not relevant here. *Id.* at 21–24. It concluded its opinion by quickly rejecting the plaintiff's argument that he qualified for the imminent danger exception, stating that it "d[id] not conclude that the facts alleged support a finding that [the plaintiff] was in imminent danger at the time he filed his initial complaint." *Id.* at 24.

In August 2010, the Second Circuit found the imminent danger exception potentially satisfied for the first time. *See Chavis*, 618 F.3d 162. The plaintiff in this case filed an initial complaint alleging that staff members and officials at Southport Correctional Facility, where he was then incarcerated, committed many wrongs, including "physical injury, threats of violence, and deprivation of medical treatment." *Id.* at 165. Relevant here, the plaintiff alleged that "eight officers severely beat him on July 17, 2006 in retaliation for his filing grievances alleging prior misconduct by prison officials," and that the "attack came shortly after [he] received a threat of physical abuse" from a non-defendant and "a similar assault" in August 2005. *Id.* The district court subsequently denied the plaintiff's motion to proceed IFP, finding he had three strikes and that "none of the complaint's wholly conclusory allegations r[o]se to the level of imminent danger of serious physical injury." *Id.* at 165–66 (alterations and internal quotation marks omitted). The plaintiff filed "a motion for leave to amend, emphasizing that he was in fact 'in imminent danger of physical injury.'" *Id.* at 166. Specifically:

> Although he did not assert other violent incidents, he claimed, inter alia, that one of the officers involved in the July 17 beating had "visited Plaintiff's new SHU-solitary cell verbally threatening to assault Plaintiff again" and that another had "visited Plaintiff's SHU-solitary cell for intimidation reasons." Subsequently, on February 16, 2007, [the plaintiff] filed a motion seeking an order to show cause why a preliminary injunction should not issue. In his motion, [the plaintiff] claimed

"repeated verbal threats of injury/death by defendants . . . without cease," citing to four newly filed grievances "and nearly a dozen more dated in this new year of 2007."

*Id.* (alterations and italics omitted). The district court construed the plaintiff's motion as a motion for reconsideration, denied both motions, and dismissed the complaint for failure to pay the filing fee. *Id.*

On appeal, the plaintiff argued, among other things, that the district court erred in finding that his complaint did not satisfy the imminent danger exception and that it abused its discretion in denying him leave to amend. *Id.* The Second Circuit noted that the "original complaint present[ed] a close question," but declined to address it, "because [the plaintiff's] complaint as he sought to amend it would seemingly have alleged imminent danger." *Id.* at 170. The court explained that the new factual allegations indicated that "one of the officers who had allegedly beaten [the plaintiff] on July 17 had verbally threatened to assault him again and that another of those officers had visited his cell for intimidation reasons." *Id.* (internal quotation marks omitted). The Second Circuit explained that

This by itself would appear to be sufficient to allege imminent danger of serious physical injury. An allegation of a recent brutal beating, combined with three separate threatening incidents, some of which involved officers who purportedly participated in that beating, is clearly the sort of ongoing pattern of acts that satisfies the imminent danger exception.

*Id.* The Second Circuit also noted that the additional factual allegations in the plaintiff's motion for a preliminary injunction—"that some sixteen [d]efendants had threatened him with injury or death on about a dozen occasions in the previous several weeks—render[ed] his claim to the imminent danger exception even stronger." *Id.* at 170–71. Thus, concluding that "it appears that [the plaintiff's] complaint—had he been allowed amendment—might very well have satisfied the imminent danger exception," the court vacated and remanded the district court's order. *Id.* at 171.

In 2011, the Second Circuit decided two more cases in which it briefly addressed the imminent danger exception. In July, the Second Circuit decided *Mills v. Fischer*. *See* 645 F.3d 176 (2d Cir. 2011). In that case, the court denied the plaintiff's motion for leave to proceed IFP, finding that he had at least five strikes and stating, without further explanation, that his "complaint, which concerns limitations to his visitation rights at the prison, does not allege danger of serious physical injury." *Id.* at 177. In October, the Second Circuit decided *Collazo v. Pagano*, 656 F.3d 131 (2d Cir. 2011) (per curiam). In that case, the plaintiff alleged that while he was incarcerated at Great Meadow, certain officials had "improperly denied him his medically-prescribed therapeutic diets," in violation of his Fourteenth and Eighth Amendment rights. *Id.* at 132–33. The court affirmed the revocation of the plaintiff's IFP status, agreeing with the district court that the plaintiff had accrued at least three strikes and that the complaint failed to satisfy the imminent danger exception because "by the time the suit was filed, [the plaintiff] had already been restored to a satisfactory diet." *Id.* at 134.

Finally, in April of this year, the Second Circuit decided *Akassy*. *See* 887 F.3d 91. In that case, the plaintiff moved for leave to prosecute several appeals IFP, arguing that the district court erred in finding that he had accrued three strikes, that "his life is in danger," and that § 1915(g) is unconstitutional. *Id.* at 94–95. The Second Circuit rejected all of the plaintiff's arguments, including his attempt to qualify for the imminent danger exception, explaining that the plaintiff, "who s[ought] to sue his former attorneys," did "not meet either the timing or the nexus requirement" under § 1915(g) despite alleging that he "ha[s] been subjected to abuses, physical assaults and denied [his] prisoner's rights by overzealous Correctional Officers for filing grievances and reporting abuses . . . and because of the nature of [his] alleged criminal case and the legal malpractice." *Id.* at 96–97 (internal quotation marks omitted) (citing *Welch*, 207

F.3d at 131–32); *see also id.* at 93 (explaining that the plaintiff's three federal cases "alleg[ed]

misfeasance and ineffective assistance by attorneys who had represented him in his criminal case

before trial, during trial, or on appeal").

Although not binding, the Court notes that other circuit courts also have considered the

imminent danger exception.  No published decision has found allegations of a past harm coupled

with vague or conclusory claims of possible future injury to qualify for the exception.  *See, e.g.*,

*Asemani v. United States Citizenship and Immigration Services*, 797 F.3d 1069, 1075–76 (D.C.

Cir. 2015) (holding that the plaintiff's allegations of two assaults prior to being placed in

protective custody followed only by claims of generic threats of violence were insufficient to

satisfy the imminent danger exception); *Ball v. Famiglio*, 726 F.3d 448, 468–70 (3d Cir. 2013)

(finding that a plaintiff who alleged previous burns and bruises from prison personnel, denial of a

wheelchair and pain medication, lack of proper treatment for her vision, and exposure to mold

and mace that aggravated her asthma did not qualify for the imminent danger exception because

all of the allegations were of past injuries that did not recur), *abrogated in part by Coleman v.

Tollefson*, 135 S. Ct. 1759, 1763 (2015); *Mitchell v. Federal Bureau of Prisons*, 587 F.3d 415,

420–22 (D.C. Cir. 2009) (holding that allegations of the prison being dangerous and known for

murders and assaults on snitches like the plaintiff were insufficient to demonstrate an ongoing

threat of imminent danger); *Martin v. Shelton*, 319 F.3d 1048, 1050–51 (8th Cir. 2003) (holding

that the plaintiff's allegations of being forced to work in inclement weather twice in the past did

not include any specific factual allegations of ongoing danger and this did not satisfy the

imminent danger exception); *Medberry v. Butler*, 185 F.3d 1189, 1193 (11th Cir. 1999) (holding

that a plaintiff who was physically assaulted in prison due to his status as a sex offender and

subsequently placed in administrative confinement did not qualify for the imminent danger

exception because the assault was a past action).[14]

## b. Plaintiff's Allegations of Imminent Danger of Serious Physical Injury

Plaintiff has made numerous allegations that he is being threatened with "serious physical injury," (*see, e.g.*, Fifth Am. Compl. 6), thereby invoking the exception to the three strikes rule, *see Malik*, 293 F.3d at 563. As the Second Circuit noted in *Chavis*, "[f]or present purposes, the only relevant allegations are those in which [Plaintiff] describes physical injury, threats of violence, and deprivation of medical treatment."[15] *Chavis*, 618 F.3d at 165. Plaintiff's relevant allegations generally fall into three different categories: (1) allegations against Green Haven officers and administrators—the Defendants—regarding only conditions existing prior to the time the Complaint was filed; (2) allegations made against Great Meadow officers, none of

---

[14] Indeed, circuit courts seem far more likely to determine that plaintiffs suffering from chronic and untreated illnesses qualify for the imminent danger exception. *See, e.g.*, *Mitchell v. Nobles*, 873 F.3d 869, 874 (11th Cir. 2017) (holding that allegations of a total lack of treatment for an illness and the resulting onset of another disease fall within the imminent danger exception); *Vandiver v. Prison Health Services, Inc.*, 727 F.3d 580, 587 (6th Cir. 2013) (holding that allegations of serious physical injury—such as partial amputations—as a result of being denied adequate medical treatment for a chronic illness satisfy the imminent danger exception); *Andrews v. Cervantes*, 493 F.3d 1047, 1055–56 (9th Cir. 2007) (holding that the plaintiff qualified for the imminent danger exception because, despite a hepatitis C epidemic, prison officials failed to screen inmates for infectious diseases to prevent them from spreading); *Ibrahim v. District of Columbia*, 463 F.3d 3, 6–7 (D.C. Cir. 2006) (holding that failure to provide adequate treatment of hepatitis C or any other chronic and potentially fatal disease qualifies as imminent danger of serious physical injury); *McAlphin v. Toney*, 281 F.3d 709, 711 (8th Cir. 2002) (holding that the plaintiff who had been consistently denied dental work and subsequently required seven extractions, two of which were delayed even longer, qualified for the imminent danger exception); *but see White v. State of Colorado*, 157 F.3d 1226, 1232 (10th Cir. 1998) (holding that allegations of deprivation of life sustaining medication and medical treatment were too vague to qualify for the exception).

[15] For purposes of deciding this Motion, Plaintiff's claims of blocked mail, blocked grievance procedure, blocked access to law libraries, and any other allegations that do not fit one of the three categories listed and therefore will not be considered. (*See, e.g.*, Compl.; Fifth Am. Compl.; Letter from Plaintiff to Court (Aug. 4, 2017) (Dkt. No. 5); Letter from Plaintiff to Court (Aug. 30, 2017) (Dkt. No. 10); Letter from Plaintiff to Court (Nov. 29, 2017) (Dkt. No. 54); Letter from Plaintiff to Court (Feb. 2, 2018) (Dkt. No. 69).)

whom is a defendant, regarding conditions at the time the Complaint was filed; and (3) allegations made regarding only conditions existing after the initial Complaint was filed. Because the imminent danger must have existed "at the time the complaint [was] filed," *Malik*, 293 F.3d at 563, only allegations that fall into the second category can satisfy the exception. However, conditions that were created prior to the time the complaint was filed may still be relevant to the analysis, provided that they involve the same Defendants or are related to the claims or prior threats or acts of violence such that they could be considered ongoing. *See Chavis*, 618 F.3d at 170 (holding that threats made by officers who had previously assaulted the plaintiff satisfied the exception).

Plaintiff makes numerous allegations against the Defendant officers and supervisors of Green Haven, where he was incarcerated prior to filing the Complaint.[16] The first series of allegations Plaintiff presents are that he received threats of physical injury and death from both an unidentified "beat up squad" and Dapecevic and Wellington. (Compl. 2; Fourth Am. Compl. 3.) Plaintiff continues to allege that Dapecevic and Wellington strip searched him and several other inmates for a period of 11 months. (Compl. 2; Fourth Am. Compl. 4; Fifth Am. Compl. 5.) This allegation is supported by several notarized affidavits from fellow inmates who witnessed the searches. (Pl.'s Oct. 17 Letter Exs. 9–10, 12–17.) During one of the strip searches, Plaintiff was allegedly punched in the head and body. (Compl. 2; Fourth Am. Compl. 5; Fifth Am. Compl. 5.) During a later strip search, Plaintiff was assaulted again—this time slammed against a wall injuring his shoulder and back, and then punched repeatedly. (Compl. 2; Fourth Am. Compl. 5; Fifth Am. Compl. 5.) Plaintiff does not specifically identify who assaulted him on

---

[16] Although Plaintiff's various filings are disorderly and the timeline is generally difficult to discern, the Court has done its best to present the relevant allegations in chronological order.

these occasions, but, a fair inference is that they are employees at Green Haven. Construing his submissions liberally, Plaintiff may be alleging that Dapecevic, Wellington, or both, attacked him in retaliation for his filing grievances. (*See, e.g.*, Compl. 5.) Plaintiff requested medical attention for his injuries, but "was denied." (Compl. 2.) Several years later, when Plaintiff claims he finally received medical attention, Plaintiff learned that he then had injuries to several spinal disks. (Pl.'s Aug. 25 Letter 2.)

As stated above, none of these allegations, individually, can support Plaintiff's claim to the imminent danger exception because none establish any imminent danger at the time the Complaint was filed. *Malik*, 293 F.3d at 563 (holding that the imminent harm exception exists to prevent impending harms, "not those harms that had already occurred." (internal quotation marks omitted)); *see also Pettus*, 554 F.3d at 296 (explaining that an imminent danger is not one "that has dissipated by the time a complaint is filed"). Put differently, Plaintiff cannot claim imminent danger from events that occurred in the past, without allegations that they are ongoing or likely to continue in the future—particularly where he is no longer incarcerated at and is not likely to return to Green Haven, where these events took place and where the Defendants are employed. However, the physical assaults alleged above create the *possibility* for Plaintiff to qualify for the exception, provided that there is some possibility for repeat threats and intimidation by these Defendants or those acting on their behalf. *See Chavis*, 618 F.3d at 170 ("An allegation of a recent brutal beating, combined with three separate threatening incidents, some of which involved officers who purportedly participated in that beating, is clearly the sort of ongoing pattern of acts that satisfies the imminent danger exception.").

When Plaintiff was moved from Green Haven to Great Meadow, the "retaliation" for his grievances allegedly followed him. (Fifth Am. Compl. 6; *see also* Compl. 4.) Plaintiff

specifically alleges that almost immediately after arriving at Great Meadow, the sergeant threatened him, attempting to convince him to drop his lawsuit because of a phone call from Green Haven.  (Pl.'s Aug. 25 Letter 2.)  Plaintiff claimed that he was also personally threatened by an unidentified caller from Green Haven on several occasions.  (Compl. 4.)  As early as three days after his Complaint was filed, Plaintiff filed a letter alleging that "Greenhaven . . . called [Great Meadow] . . . and officers started to threaten [him]."  (Letter from Plaintiff to Court (Aug. 4, 2017) at 1 (Dkt. No. 5).)  Plaintiff later clarified that calls were placed weekly from Green Haven to Great Meadow inciting the latter to retaliate against him.  (Pl.'s Oct. 13 Mem. 3.)  Plaintiff sent the Court several letters attaching signed declarations from fellow inmates who claim to have witnessed non-Defendant Great Meadow correctional officers threaten Plaintiff with bodily harm and death, as the retaliation requested in the calls from Green Haven officials to Great Meadow officials.  (*See* Decl. of Randy Manzueta ("Manzueta Decl.") (Dkt. No. 17); Letter from Plaintiff to Court (Oct. 11, 2017) ("Pl.'s Oct. 11 Letter") 3–7 (Dkt. No. 21).) [17] Similar to his allegation involving Green Haven, Plaintiff alleges that he also received death threats from Great Meadow's "beat up squad," though he does not mention any of the squad members by name.  (Compl. 4.)

These allegations all relate to conditions that would have been present at the time that

---

[17] The Court is aware of no case relying on or refusing to rely on declarations made by other inmates on behalf of the plaintiff in deciding a motion to revoke IFP status.  Such documents are typically inadmissible at the motion to dismiss stage, and certainly inadmissible when they are not notarized or signed under penalty of perjury.  *See Lamoureux v. AnazaoHealth Corp.*, No. 03-CV-1382, 2010 WL 4875870, at *2 (D. Conn. Nov. 18, 2010) (explaining this admissibility requirement).  Indeed, the fact that these declarations all use identical language gives the Court pause.  (*See* Pl.'s Oct. 11 Letter 3 ("I [declarant] witnessed on several numerous occasions [sic] for months that certains [sic] officers of Great Meadow C.F. [t]hreaten the plaintiff with serious bodily harm and dead cause of retaliation from Green [] Haven C.F. calling [Great Meadow]."); *id.* at 4–7 (same); Manzueta Decl. (same).)  However, in the interest of being thorough and fair to Plaintiff, the Court has considered these declarations.

Plaintiff filed his initial Complaint. Because they satisfy the time requirement for the imminent danger exception, two questions remain: (1) do any of the allegations qualify as posing imminent danger of serious physical harm to Plaintiff; and if they do, then (2) does that allegation have a sufficiently close nexus to Plaintiff's claim for relief?

The Court finds that none of Plaintiff's allegations qualify as imminent danger of serious physical harm. As an initial matter, all of Plaintiff's allegations regarding the threats he received once he arrived at Great Meadow are conclusive and speculative. Plaintiff merely uses the word "threaten" without specifying who threatened him, what the threat entailed, and how he knew it was related to a call from Green Haven—let alone who made the calls from Green Haven. (*See* Compl. 4 ("[P]laintiff reaches [Great Meadow] and was threatened on several numerous occas[]ions by phone call from [G]reenhaven."); *id.* at 14 ("Officers threatened [P]laintiff several times in the side room."); *id.* ("Soon as [P]laintiff reached [Great Meadow] he was threatened cause of a phone call."); *id.* at 28 (same); *id.* at 25 ("I Andre Antrobus is in imminent danger in [Great Meadow] with threats of [r]etaliation that followed from Green Haven . . . harassment of tak[ing] my evidence, blocking my mail and threats accompanied!"); *id.* at 26 (alleging that Plaintiff "is in imminent danger from present incident in above caption that followed him cause of the 'blue shield' business relationship."); *id.* at 30 ("Then Green Haven called Great Meadow and Plaintiff was threaten[ed] and harassed[, this] means they all work together in a business relationship."); *id.* at 32 ("I['m in imm[in]ent danger for my health."); Fifth Am. Compl. 6 ("Then retaliation followed to [Great Meadow] where a number of 'complex issues' happen and 'several threats of serious physical injury' for months. Now happening in Sing Sing . . . [be]cause of grievance[s] submitted and retaliation from prior lawsuits."); Pl.'s Oct. 17 Letter 1 (alleging "threats of danger of serious physical injury!"); *id.* at 2 (alleging "continuous

[r]etaliation stemming from Green Haven . . . calling [Great Meadow] staff to [r]etaliate and threaten him with 'danger of serious physical injury'"); *id.* at 3 (describing "continuous retaliation stemming from Green Haven . . . calling [Great Meadow]" as "[b]locking [m]ail, [d]enying [l]aw [l]ibrary, [m]issing legal mail and [b]lockin[g] [d]isbursements to pay filing fees"); *id.* at 16–18 (declarations alleging "certain officers of Great Meadow . . . threaten the plaintiff with serious bodily harm and death cause of retaliation from [Green Haven] . . . calling [Great Meadow]"); *id.* at 23 ("For several months Mr. Antrobus ha[s] been feeling retaliation from staff of [Great Meadow] as in threats denying access to the courts. . ."); Pl.'s Aug. 25 Letter 1 ("Cause of retaliation from [Green Haven] . . . calling Great Meadow . . . I[']ve been threaten[ed]. . ."); *id.* at 2 ("[B]y the time I reached Great Meadow . . . Green Haven . . . called Great Meadow and the officers and the sergeant took me in a secluded area and threaten[ed] me [to] not follow up on this lawsuit[,] also don'[]t submit any lawsuits over here.  After that they did that several times and esc[a]late[d] to threats of bodily harm."); *id.* at 3 (noting that C.O. Russel of Great Meadow "cursed at [Plaintiff] and threaten[ed] [him] with her fellow officers[;] they read the complaint that[']s why they are acting wors[e]," but not alleging what the threats were or how they were connected to Defendants or others at Green Haven); Pl.'s Oct. 13 Mem. 2 (noting that Green Haven "[a]uthorities made a call to Great Meadow . . . to retaliate against me and it[']s been going on ever since to the present time of filing the complaint of 'danger of serious physical injury'"); *id.* at 3 ("[T]he threat is ongoing since the initial incident by a notorious [f]acility for injuring inmates on a monthly basis."); *see also* Fourth Am. Compl. (not mentioning Great Meadow).)

The Court need not accept these conclusory, self-serving allegations as true, nor can it "invent factual allegations that [Plaintiff] has not pled." *Chavis*, 618 F.3d at 170; *see also*

*McDaniels v. Fed. Bureau of Prisons*, No. 15-CV-6163, 2016 WL 6997525, at *5 (S.D.N.Y. Nov. 29, 2016) ("Plaintiff offers nothing beyond conclusory claims that he was in imminent danger as a result of his deviated septum."); *Nelson v. Hilton*, No. 10-CV-1280, 2013 WL 877167, at *8 (N.D.N.Y. Mar. 11, 2013) ("Plaintiff has failed to provide anything more than vague, unsupported generalizations."); *Cash*, 2010 WL 5185047, at *3 (rejecting "unsupported, vague, self-serving, conclusory speculation" regarding imminent danger). That Plaintiff is familiar with—and indeed sometimes puts quotation marks around—the language of § 1915(g) does not change this conclusion. *See Ciarpaglini*, 352 F.3d at 330 (noting that "[f]requent filers sometimes allege that they are in imminent danger so they can avoid paying a filing fee"). Nor does Plaintiff's assertion, without supporting factual details, that the Great Meadow threats must have been made at the behest of Defendants at Green Haven because all prison employees conspire or work together suffice to show imminent danger. (Compl. 26 (alleging that Plaintiff "is in imminent danger from present incident in above caption that followed him cause of the 'blue shield' business relationship."); *id.* at 30 (alleging that the calls resulted in threats which "means they all work together in a business relationship").) *See Kalwasinski v. McCraken*, No. 09-CV-6295, 2009 WL 4042973, at *6 (W.D.N.Y. Nov. 19, 2009) (finding the plaintiff's conclusory allegations "that [the] [d]efendants are conspiring against him by making plans to retaliate for his filing of grievances and lawsuits" do not meet the imminent danger exception and collecting cases (italics omitted)); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007) ("Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality."); *Ciambriello v. Cty. of Nassau*, 292 F.3d 307, 325 (2d Cir. 2002) ("[C]omplaints containing only conclusory, vague, or general allegations that the defendants have engaged in a

conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed." (internal quotation marks omitted)). Thus, while the Court recognizes that it "should not make an overly detailed inquiry into whether [Plaintiff's] allegations qualify for the exception," this is not a case in which the Court is rejecting the *merits* of Plaintiff's claims; rather, the Court holds only that Plaintiff's allegations of imminent danger following his transfer to Great Meadow "are conclusory or ridiculous." *Chavis*, 618 F.3d 162 at 169–70 (internal quotation marks omitted); *cf. Andrew v. Cervantes*, 493 F.3d 1047, 1055 (9th Cir. 2007) (emphasizing that the court should not determine "what is 'serious enough' to qualify for the exception," but rather should focus only on "whether a prisoner is alleging some type of ongoing or imminent harm"). The submitted inmate declarations, even assuming they are admissible, do not change this conclusion, as they are equally conclusory. *See* Pl.'s Oct. 11 Letter 3–7 ("I [declarant] witnessed on several numerous occassions [sic] for months that certains [sic] officers of Great Meadow C.F. Threaten the plaintiff with serious bodily harm and dead cause of retaliation from Green [] Haven C.F. calling [Great Meadow].");  Manzueta Decl. (same).)

Moreover, even if Plaintiff's allegations were sufficiently specific and detailed to be taken as true, they are, at best, allegations of unfulfilled threats—not "imminent danger of serious physical injury." § 1916(g). Specifically, as explained above, Plaintiff alleges that: (1) the sergeant and other corrections officers at Great Meadow threatened him to drop his lawsuit, an unspecified number of times; (2) unspecified callers from Green Haven threatened Plaintiff on the phone, and also spoke to Great Meadow officials, inciting retaliatory threats against Plaintiff; and (3) he received physical threats observed by other inmates, some from the unidentified "beat up squad." None of these allegations indicates any actual harm to Plaintiff, nor does any indicate such harm is imminent.

In the published Second Circuit cases involving the imminent danger exception, threats alone have never qualified a plaintiff for the exception. Indeed, the plaintiffs in both *Welch* and *Harris* alleged ongoing physical harm, the latter even suffering a fractured jaw and a ruptured ear drum, and neither were found to qualify for the imminent danger exception. *See Harris*, 607 F.3d at 20, 24 (finding that the plaintiff was not in imminent danger at the time he filed the complaint, even though he was assaulted, filed a grievance, and then "was attacked again" after filing the complaint, suffering "a ruptured eardrum" and "fractured jaw"); *Welch*, 207 F.3d at 131–32 (rejecting allegations that correction officers were physically harming the plaintiff as part of a conspiracy "to injure or kill him" by denying him medical treatment). Similarly, in *Akassy*, the Second Circuit found insufficient the plaintiff's allegations that he was "subjected to abuses, physical assaults and denied [his] prisoner's rights by overzealous Correctional Officers" in retaliation "for filing grievances and reporting abuses," concluding only that the plaintiff's § 1983 complaint against his former attorneys did "not meet either the timing or the nexus requirement." 887 F.3d at 96–97. By contrast, in *Chavis*, the Second Circuit found that the plaintiff likely qualified for the imminent danger exception because he was being repeatedly intimidated and threatened by officers who had *already* demonstrated their proclivity for attacking him. *Chavis*, 618 F.3d at 170. The Second Circuit noted it was a "close question" whether the plaintiff's original complaint, which alleged a severe beating preceded by a "similar assault" and "a threat of physical abuse," sufficiently alleged imminent danger. *Id.* at 165, 170. In deciding that the plaintiff's proposed amended complaint "might very well have satisfied the imminent danger exception," the Second Circuit relied on the fact that one of the officers who had participated in the original severe beating threatened to assault the plaintiff again and another visited his cell to intimidate him, clearly indicating "the sort of ongoing pattern of acts" required

under the statute. *Id.* at 170–71 (noting that two of the three threatening incidents occurring after the brutal beating "involved officers who purportedly participated in that beating"). Although the court noted that the fact that sixteen other defendants "had threatened him with injury or death on about a dozen occasions in the previous several weeks . . . render[ed] his claim to the imminent danger exception even stronger," it did not state that these allegations—as opposed to the above ones—would alone satisfy the exception. *Id.* at 171.

In any event, as explained earlier, Plaintiff has not alleged with any specificity how often he was threatened or what the threats entailed, and he has not alleged that any Defendants here made such threats or were connected to or involved in them. For example, he does not allege that Dapecevic or Wellington had access to Plaintiff at Great Meadow to personally harm him, that they personally made calls to officers at Great Meadow directing he be harmed and that such harm occurred or was likely, or that the threats against him were similar to the ones he received—and that were acted upon—at Green Haven, such as violent strip searches. Thus, construing Plaintiff's allegations to raise the strongest arguments they suggest, Plaintiff is being threatened—albeit with serious injury and possibly death—by persons who have shown no proclivity to follow through on those threats, and none of whom "purportedly participated in [the] recent brutal beating." *Chavis*, 618 F.3d at 170. Therefore, these allegations are insufficient to allege imminent danger of serious physical injury at the time the complaint was filed.[18] *See Flemming v. Kemp*, No. 09-CV-1185, 2010 WL 3724031, at \*3 (N.D.N.Y. Aug. 19, 2010) ("[The plaintiff's] contentions of constant fear of harm, without anything pointing to a specific threat of harm or identifiable danger to his health, are insufficient to establish a danger

---

[18] Because none of Plaintiff's allegations constitute imminent danger, the Court does not need to reach the second question—whether an adequate nexus exists between Plaintiff's claims and the alleged imminent danger. *See Pettus*, 554 F.3d at 297.

that is neither speculative nor hypothetical."), *adopted by* 2010 WL 3724028 (N.D.N.Y. Sept. 15, 2010); *Word v. Annucci*, No. 09-CV-8983, 2010 WL 2179954, at *2 (S.D.N.Y. May 27, 2010) (finding conclusory allegations that the plaintiff suffered physical disabilities and was in imminent danger of serious physical injury insufficient to show imminent danger "absent . . . allegations of continuous or direct contact with [environmental tobacco smoke] . . . or any concrete allegations of the consequences of such contact"); *Burgess v. Conway*, 631 F. Supp. 2d 280, 283 (W.D.N.Y. 2009) ("To fall within the exception, . . . the danger must be specific in nature, and amount to more than just fear that a physical attack could occur at some point in the future." (italics omitted) (citing *Brown v. Johnson*, 387 F.3d 1344, 1349–1350 (11th Cir. 2004) (requiring the plaintiff to present "specific fact allegations . . . of a pattern of misconduct evidencing the likelihood of imminent serious physical injury"))); *Avent v. Fisher*, No. 07-CV-1135, 2008 WL 5000041, at *6 (N.D.N.Y. Nov. 20, 2008) (noting that "unless the prospect of . . . a future assault" threatened after a physical assault "is so specific and/or likely as to be deemed real, such an allegation will not suffice to allege an 'imminent danger' on the date of filing" (italics omitted)); *id.* ("This rule also holds true even if the reason that the plaintiff speculates he is in danger of future harm is a pattern of harassment."); *see also Asemani*, 797 F.3d at 1076 (noting that the plaintiff who "suffered two beatings in the past," did not allege "that he has suffered any beatings or received specific threats" in his new prison placement, but instead "alleges a generic 'threat of violence'"); *Martin*, 319 F.3d at 1050 (rejecting "conclusory assertions that [the] defendants were trying to kill [the plaintiff]" as "insufficient to invoke the exception to § 1915(g) absent specific fact allegations of ongoing serious physical injury, or of a pattern of misconduct evidencing the likelihood of imminent serious physical injury"); *Jackson v. Turley*, No. 11-CV-68, 2013 WL 1149847, at *3 (D. Utah Mar. 19, 2013) (noting that the

"[p]laintiff's allegations show merely ongoing generalized dissatisfaction with the treatment" rather than "any specific facts showing that he is in imminent danger of serious physical injury," and "the fact that [the] [p]laintiff continues to file voluminous, convoluted, redundant pleadings, with hundreds of pages of exhibits makes it even more doubtful that [the] [p]laintiff actually faces such imminent danger"); *cf. Williams v. Paramo*, 775 F.3d 1182, 1190 (9th Cir. 2015) (finding that the plaintiff "sufficiently alleged an ongoing danger"—specifically, "she is receiving constant, daily threats of irreparable harm, injury and death due to the prison officials and defendants revealing to other inmates (where [she] is incarcerated) that the [plaintiff] is, allegedly, a convicted sex offender and child molester, which is not true" (internal marks omitted)).

Finally, Plaintiff has made several allegations of imminent danger in his submissions following his initial complaint. Plaintiff has specifically alleged that the threats at Great Meadow continued for months, that the retaliation he complains of has followed him to Sing Sing Correctional Facility, and that an assault occurred at the Sing Sing facility. (*See* Fifth Am. Compl. 6; Letter from Plaintiff to Court (Feb. 3 2018) ("Pl.'s Feb. 3 Letter") 4 (Dkt. No. 81).) As with the allegations that Plaintiff made regarding conditions and circumstances at Green Haven, none of these allegations establishes an imminent danger of serious physical harm at the time the *initial complaint* was filed. *See Malik*, 293 F.3d at 563 (requiring that the imminent danger exist "at the time the complaint [was] filed"). Nor does Plaintiff allege with particularity *who* is threatening him at Sing Sing, *what* they are threatening him with, and *how* these threats are linked to Defendants' alleged conduct in any way. (*See* Fifth Am. Compl. 6 (stating Plaintiff received "'several threats of serious physical injury' for months" and it is "now happening in Sing Sing . . . cause of grievance submitted and retaliation from prior lawsuits").) *See Chavis*,

618 F.3d at 170 (rejecting conclusory and self-serving allegations). Similarly, the purported assault at Sing Sing was allegedly directed by Dr. Frazer, a non-Defendant medical employee at Sing Sing, and there is no indication it was done in connection with the original claims in the Complaint or is somehow connected to the Defendants, employees at Green Haven, or even the alleged ongoing threats at Great Meadow. (*See* Pl.'s Feb. 3 Letter at 4 ("Dr. Frazer of Sing Sing . . . sent employees to assault me . . . This is retaliation of a grievance on Dr. Frazer [for] . . . [being] transferred . . .").) *See Pettus*, 554 F.3d at 296, 299 (finding that the plaintiff did not meet the nexus requirement because the danger alleged was "much too attenuated" from the claims in the [c]omplaint, which did not involve conditions at the plaintiff's current prison or the people identified as placing the plaintiff in imminent danger); *see also Akassy*, 887 F.3d at 96–97 (finding that the plaintiff did not meet the timing or nexus requirements because the alleged threats of harm came from prison officials, not the attorneys he had sued).

## III. Conclusion

As Plaintiff has accrued at least three strikes pursuant to § 1915(g) and fails to satisfy the imminent danger exception, Defendants' Motion To Revoke Plaintiff's IFP status is granted. (*See* Dkt. No. 65.) Accordingly, Plaintiff's Fifth Amended Complaint is dismissed without prejudice. *See Harris*, 607 F.3d at 24 (affirming district court's dismissal of suit on the grounds that the plaintiff violated three strikes rule of the PLRA). To the extent Plaintiff wishes to continue to prosecute this Action, Plaintiff must pay the appropriate filing fees within 30 days of the date of this Order. If Plaintiff fails to abide by this 30-day deadline, this case will be dismissed with prejudice.[19]

The Clerk of Court is respectfully directed to mail a copy of this Opinion to Plaintiff.

SO ORDERED

Dated:     July 2, 2018
           White Plains, New York

                                        KENNETH M. KARAS
                                        UNITED STATES DISTRICT JUDGE

---

[19] If, after paying the filing fees, Plaintiff wishes to file a Sixth Amended Complaint, he *must* obtain Defendants' written consent or file a letter requesting that the Court grant him leave to amend; any complaint filed without following these instructions will not be accepted. *See* Fed. R. Civ. P. 15(a).